# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS, LLC,** | |
| **Plaintiff,** | **Civil Action No. 3:23-cv-01755-L-BN** |
| **v.** | **Consolidated with Civil Action Nos. 3:23-cv-01902-L & 3:23-cv-01881-L** |
| **YVES SAINT LAURENT AMERICA, INC., ALEXANDER MCQUEEN TRADING AMERICA, INC. and BOTTEGA VENETA, INC.** | |
| **Defendant.** | |

**DEFENDANTS YVES SAINT LAURENT AMERICA, INC., ALEXANDER MCQUEEN TRADING AMERICA, INC. AND BOTTEGA VENETA, INC.'S CONSOLIDATED MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

III.  SUMMARY OF THE ARGUMENT ............................................................. 3

IV.   STATEMENT OF RELEVANT FACTS ....................................................... 6

V.    LEGAL STANDARDS ........................................................................... 9

      A.    Dismissal Under Rule 12(b)(6) ........................................................ 9

      B.    Patent Eligibility Under 35 U.S.C. § 101 ........................................ 10

VI.   ARGUMENT:  THE ASSERTED PATENTS CLAIM PATENT-INELIGIBLE
      SUBJECT MATTER ........................................................................... 11

      A.    Claim 1 of the '752 Patent is Representative of All Claims ............... 12

      B.    *Alice* Step One: The Asserted Patents are Directed to an Abstract Idea ............. 15

            1.    The Representative Claim is Focused on the Abstract Idea of Using
                  a Marking Associated with an Object to Communicate and Obtain
                  Information About the Object ................................................. 15

            2.    The Representative Claim is Not Directed to a Specific
                  Improvement in the Way a Computer Operates ....................... 16

            3.    The Representative Claim Can be Carried Out Entirely by a
                  Human .................................................................................. 21

      C.    *Alice* Step Two:  The Asserted Patents Lack an Inventive Concept that
            Amounts to Significantly More Than the Abstract Idea ...................... 22

            1.    Considered Individually, the Representative Claim's Computer
                  Components are Conventional and Well-Understood ............. 23

            2.    The Elements of the Claims Do Not Include an Inventive Concept
                  When Considered as an Ordered Combination ...................... 24

VII.  CONCLUSION ................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)................................................................4, 20, 22

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).............................................................................. *passim*

*Amdocs (Israel) Ltd. v. Opennet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)..........................................................6, 11, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................9

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)................................................................22, 25

*Bilski v. Kappos*,
    561 U.S. 593 (2010).................................................................................9, 10

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)................................................................23, 24

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
    681 Fed. Appx. 950 (Fed. Cir. 2017)............................................................20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)........................................................12, 13, 15, 24

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017)................................................................11, 22

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)......................................................................9

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980).....................................................................................10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................. *passim*

*Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)..............................................................5, 11, 21

*FairWarning IP, LLC v. Iatric Sys.*,
    839 F.3d 1089 (Fed. Cir. 2016) .................................................................10

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ...................................................................9

*Genetic Techs. Ltd. v. Merial LLC*,
    818 F.3d 1369 (Fed. Cir. 2016) .................................................................10

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 Fed. Appx. 534 (Fed. Cir. 2021) .....................................................5, 19

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ................................................................ 21

*NetSoc v. Match Grp., LLC*,
    838 Fed. Appx. 544 (Fed. Cir. 2020) ......................................................11

*PersonalWeb Techs. LLC v. Google*
    LLC, 8 F.4th 1310 (Fed. Cir. 2021) .........................................................22

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ................................................................22

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................19

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) .......................................................... *passim*

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017) ................................................................12

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
    657 Fed. Appx. 991 (Fed. Cir. 2016) .......................................................21

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................24

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ..................................................................16

*Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ...........................................................19, 22

*Voip-Pal.com., Inc. v. Apple Inc.*,
    411 F. Supp. 3d 926 (N.D. Cal. 2019) ..................................................5, 20

*Voip-Pal.com., Inc. v. Apple Inc.*,
    828 Fed. Appx. 717 (Fed. Cir. 2020) .................................................................5, 20

*Yu v. Apple Inc.*
    1 F.4th 1040 (Fed. Cir. 2021) .........................................................................10, 11


**Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*


**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 9

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Yves Saint Laurent America, Inc. ("YSL"), Alexander McQueen Trading America, Inc. ("AMQ"), and Bottega Veneta, Inc. ("BV") (collectively, "Defendants") respectfully submit this consolidated motion (the "Motion") to dismiss Plaintiff Symbology Innovations, LLC's ("Plaintiff") Amended Consolidated Complaint (Dkt. No. 28; "Consolidated Complaint") with prejudice for failing to state a claim upon which relief can be granted.  Plaintiff's claims of patent infringement against Defendants should be dismissed because all claims of U.S. Patent Nos. 8,424,752 ("the '752 Patent"), 8,651,369 ("the '369 Patent"), and 8,936,190 ("the '190 Patent") (collectively, the "Asserted Patents"), are invalid under 35 U.S.C. § 101 for being directed to patent-ineligible subject matter.

## I.      INTRODUCTION

The Asserted Patents are directed generally to "enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." *See, e.g.*, '752 Patent, Dkt. No. 28-1 at Abstract.  Put another way, the Asserted Patents are directed to the abstract idea of using a "marking" (e.g., a barcode, a QR code, etc.) associated with an object to communicate and obtain information about that object.  The Asserted Patents do not use any special hardware to achieve this goal.  Instead, they utilize nothing more than generic computer and network components, performing their basic functions.

Controlling Federal Circuit precedent dictates that the alleged invention of the Asserted Patents is unpatentable.  The Federal Circuit held in *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) that claims directed to decoding a marking (in that case, a QR code) affixed to the outside of a piece of mail for the purpose of communicating information about the piece of mail, were properly found to be invalid under Section 101 on a motion to dismiss.  The claims of the Asserted Patents are not materially different from the claims at issue

1

in *Secured Mail* and should be found invalid for the same reasons.  The Federal Circuit has also repeatedly held that claims like the ones here, which "fall into a familiar class of claims … [directed to] collecting information, analyzing it, and displaying certain results of the collection and analysis[,]" are directed to patent-ineligible abstract ideas.  *See, e.g. Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Defendants respectfully request the Court to dismiss the Consolidated Complaint with prejudice.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Symbology filed this lawsuit on August 7, 2023 accusing YSL of infringing at least Claim 1 of U.S. Patent No. 7,992,773; Claim 1 of the '752 Patent; Claim 1 of the '369 Patent; and Claim 1 of the '190 Patent, via YSL's alleged use of Quick-Response ("QR") codes associated with "a website of [the] Defendant." Compl., Dkt. No. 1 at ¶ 44.  Symbology later filed similar lawsuits, asserting similar allegations, against BV and AMQ in this District on August 22 and 24, 2023, respectively.  *See* Case Nos. 3:23-cv-01881 and 3:23-cv-01902.

On December 11, 2023, each Defendant moved to dismiss under Fed. R. Civ. P. 12(b)(6). *See*, *e.g.*, Dkt. No. 19.  On December 13, 2023, the parties jointly moved to consolidate the three actions.  Joint Motion to Consolidate, Dkt. No. 24.  On December 27, 2023, the Court consolidated the three actions.  Order, Dkt. No. 27 at 1.  In that same Order, the Court directed Plaintiff to file an amended consolidated complaint by January 23, 2024.  *Id.*  On January 23, 2024, Plaintiff filed the Consolidated Complaint, which mooted Defendants' first motion to dismiss.  Consolidated Complaint, Dkt. No. 28.  Defendants now file this consolidated motion to dismiss in response to the Consolidated Complaint.

## III.   SUMMARY OF THE ARGUMENT

The claims of the Asserted Patents are directed to the abstract idea of using a marking associated with an object, such as a barcode or a QR code, to communicate and obtain information about the object.  This is an unpatentable abstract idea for *several independent reasons*, any one of which can support a grant of the present Motion.

***First***, the focus of the claims of the Asserted Patents is an abstract idea that cannot pass Step One of the *Alice* test.  The basic concept at the heart of the claims is using a marking, such as a barcode, to communicate and obtain information about an object of interest.  The claim accomplishes this by capturing, detecting, decoding, sending, receiving and displaying data using standard computer components and well-known processes.  '752 Patent at 13:39-52.  At base, the claims are therefore directed to the most generic functional steps a standard computer uses to capture, transmit and display data.

The Federal Circuit has advised that its prior Section 101 decisions can be used as guidance to invalidate similar claims.  And, relevant here, in *Secured Mail v. Universal Wilde*, the Federal Circuit invalidated patent claims under Section 101 that were directed to using a marking associated with an object (a piece of mail), for the purpose of communicating information about the object.

Further, and more fundamentally, the Federal Circuit consistently holds that patent claims like the ones here, which are merely directed to collecting information, analyzing it, and displaying certain results "fall into a familiar class of claims 'directed to' a patent-ineligible concept" that fails both steps of the *Alice* test.  *See*, *e.g.*, *Elec. Power Grp.*, 830 F.3d at 1352-54.

***Second,*** the Asserted Patents are not directed to specific improvements to computers. The claims recite generalized steps to carry out generic, results-focused computing functions

3

using nothing but conventional computer and network components.  For example, Representative Claim 1 of the '752 Patent simply requires the generalized steps and results-focused computer functions of: (1) capturing a digital image, (2) detecting symbology (e.g., a barcode or a QR code) associated with an object within the digital image, (3) decoding the symbology to obtain a decode string, (4) sending the decode string to a remote server, (5) receiving information about the object from the remote server, and (6) displaying the information.

The above-referenced functions are accomplished using only generic computing components and technology, such as: (i) a "digital image capturing device" (i.e., a camera, scanner, etc.), (ii) a "portable electronic device" (i.e., a mobile phone, personal digital assistant (PDA), etc.), (iii) "symbology" (i.e., a barcode, photosymbol, standard or specialized text, a UPC number, an alphanumeric number assigned to a product, the name of the article, etc.), (iv) a "decode string" (i.e., information obtained from the barcode), (v) "visual detection applications residing on the portable electronic device" (i.e., standard and existing decoding software, such as image or character recognition software, stored on the portable electronic device and used to decode the captured symbology), (vi) a "remote server" (i.e., a general purpose computer associated with a website), and (vii) a "display device associated with the portable electronic device" (i.e., any suitable display incorporated into a portable electronic device).  The Asserted Patents readily admit that all of these computing components were well known.  '752 Patent, Dkt. No. 28-1 at 2:55-3:60; see, e.g. Secure Mail Sols., 873 F.3d at 912 (finding claims directed to communicating information about an object were patent-ineligible where all the computing hardware was described in the patents as generic or conventional).

Pairing generic computer components with functional, results-focused language is a hallmark of claims directed to a patent-ineligible abstract idea.  See, e.g., Affinity Labs of Tex.,

*LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (claims requiring results-focused actions "through the use of conventional devices, without offering any technological means of effecting that concept," are directed to an abstract idea); *see also iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 538 (Fed. Cir. 2021) (claims directed merely to taking results-focused actions using generic components shows that the claims are directed to an abstract idea); *Elec. Power Grp.*, 830 F.3d at 1356 (the "result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology").

Put another way, when the claims do not indicate *how* any of the required actions are accomplished by the generic components and instead focus on the results (i.e., capturing a digital image, without claiming how that is happening), the claims are patent ineligible. *See*, *e.g.*, *Voip-Pal.com., Inc. v. Apple Inc*., 411 F. Supp. 3d 926, 955 (N.D. Cal. 2019) *aff'd without opinion*, 828 Fed. Appx. 717 (Fed. Cir. 2020) (claims containing no instructions for how each step of the claimed process is accomplished but, rather, simply requiring the functional results of receiving, processing, and classifying were directed to an abstract idea).

***Third***, the claimed invention can be carried out entirely by a human.  The Federal Circuit has held that a process that can be performed by humans does not become patentable simply because it is later done with a computer.  *See*, *e.g.*, *Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020).  This is the exact situation we have here.  For as long as there have been reference librarians, a person interested in information about an object can acquire initial information (such as standard or specialized text, which is expressly contemplated by the Asserted Patents) about that object, bring that information to a reference librarian, and receive more information about the object in return, wherein the additional

information is displayed in any number of conventional ways (books, magazines, microfiche, etc.).  Computerizing this process is not patentable.

*Fourth*, none of the claims include an inventive concept that could transform them into a patent-eligible invention under Step Two of the *Alice* test.  Individually, each claim limitation – "capturing," "detecting," "decoding," "sending," "receiving," and "displaying" – is a well-understood, routine and basic computer function.  Even considered as an ordered combination, the claims still only recite a conventional approach for communicating and receiving information about an object of interest.  The claims do not require any non-conventional computer hardware, or even a non-conventional and non-generic arrangement of conventional hardware.  *E.g.*, *Elec. Power Grp.*, 830 F.3d at 1355.  Nor do the claims cover a non-conventional use of conventional components.  *E.g.*, *Amdocs (Israel) Ltd. v. Opennet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016).

A determination of whether the claims of the Asserted Patents are directed to an abstract idea does not require discovery or formal claim construction.  To avoid wasting judicial and party resources litigating invalid patents, Defendants respectfully request that the Court dismiss the Consolidated Complaint with prejudice now.

## IV.   STATEMENT OF RELEVANT FACTS

The Asserted Patents are directed to a system and method for enabling a portable electronic device to retrieve information about an object after the object's "symbology" (e.g., a QR code or a barcode) is detected, and present the retrieved information on the portable electronic device.  '752 Patent, Dkt. No. 28-1 at Abstract, 1:17-20, 1:65-2:2, 2:55-63;

Consolidated Complaint, Dkt. No. 28 at ¶ 24.[1]  The "symbology" may be "in any form currently practiced in the art including barcodes, photosymbols, standard or specialized text, etc., or any future type of symbology."  '752 Patent, Dkt. No. 28-1 at 8:37-40.

As explained in Section VI(A), *infra*, Claim 1 of the '752 Patent is representative of all claims of the Asserted Patents.  The claim reads as follows:

> 1. A method comprising:
>
>> capturing a digital image using a digital image capturing device that is part of a portable electronic device;
>>
>> detecting symbology associated with an object within the digital image using a portable electronic device;
>>
>> decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;
>>
>> sending the decode string to a remote server for processing;
>>
>> receiving information about the object from the remote server wherein the information is based on the decode string of the object;
>>
>> displaying the information on a display device associated with the portable electronic device.

'752 Patent, Dkt. No. 28-1 at 13:39-52.

The claimed *method* includes just six generic steps, according to Plaintiff itself: (1) *capturing an image* with a camera or a scanner on a portable electronic device (e.g., taking a photograph or scanning an image with a mobile phone), (2) *detecting symbology* associated with an object within the image (e.g., recognizing a QR code or barcode in the captured image), (3) *decoding the symbology* to obtain a decode string (e.g., extracting information from the QR code or barcode), (4) *sending the decode string* to a remote server for processing (e.g., sending a

---

[1] The Asserted Patents share a common specification and are identical except for their claims. Therefore, references to the specification herein cite only to the '752 Patent.

request for a webpage using the information obtained from the QR code or barcode), (5) *receiving information* about the object from the server in response (e.g., receiving the webpage containing the information about the object), and (6) *displaying the information* received on the portable electronic device (e.g., displaying the webpage containing the information about the object on the screen of the portable electronic device).  Consolidated Complaint, Ex. F, Dkt. No. 28-6; '752 Patent, Dkt. No. 28-1 at 13:39-52.  Notably, there is no mention of *how* the claimed method is accomplished.

The specification of the Asserted Patents is consistent with Plaintiff's assessment.  When the patent applications that led to the Asserted Patents were drafted, the applicant acknowledged that the claimed process is implemented entirely through standard, generic computing components, which were well-known in the prior art.  These *components* include: (1) a "digital image capturing device" (i.e., a camera, scanner, or other device for capturing images),[2] (2) a "portable electronic device" (i.e., any mobile device – a mobile phone, personal digital assistant (PDA), portable media player, gaming device, etc. – capable of taking a photograph, sending and receiving information, and displaying received information),[3] (3) "visual detection applications" (i.e., standard and existing decoding software, such as image or character recognition software, stored on the portable electronic device and used to decode the captured symbology),[4] (4) a "remote server" (i.e., a general purpose computer associated with a website for sending information from the website to remote devices),[5] and (5) a "display device associated with the portable electronic device" (i.e., any suitable display on a portable electronic device).[6]

---

[2] *See* '752 Patent, Dkt. No. 28-1 at 2:55-3:11; 11-10-11.
[3] *See id.* at 1:22-37; 1:52-61; 3:2-3; 5:2-5; 7:18-20; 9:17-32; 9:46-53.
[4] *See id.* at 2:64-3:50; 4:50-55; 8:57-9:6; 12:42-54.
[5] *See id.* at Figs. 1, 4; 3:61-4:28; 5:33-42.
[6] *See id.* at 6:66-7:9.

These components merely deploy *pre-existing technology*.  For example, they utilize known symbology and a decode string for the purpose of sending, retrieving and displaying information about an object associated with the symbology.  '752 Patent, Dkt. No. 28-1 at 3:29-36, 8:37-40.

## V.    LEGAL STANDARDS

### A.    Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Although factual allegations must be taken as true when considering a Rule 12(b)(6) motion, legal conclusions are given no deference – those matters are left for the court to decide.  *Iqbal*, 556 U.S. at 678.  Courts must also not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

Patentability under 35 U.S.C. § 101 is a threshold legal issue.  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Moreover, "[p]atent eligibility can be determined on the pleadings … when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law."  *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018).  Accordingly, the Section 101 inquiry is properly raised at the pleadings stage if it is clear

from the face of the patent that its claims are directed to patent-ineligible subject matter.  *See*, *e.g.*, *Yu v. Apple Inc.* 1 F.4th 1040, 1046 (Fed. Cir. 2021); *see also FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).  In those situations, claim construction is not required to find a patent invalid under Section 101.  *See*, *e.g.*, *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("Claim construction is not an inviolable prerequisite to a validity determination under § 101.") (internal citation omitted).

### B.      Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of inventions that are eligible for patent protection:  "any new and useful [1] process, [2] machine, [3] manufacture, or [4] composition of matter."  35 U.S.C. § 101.  The Supreme Court, however, long ago identified three categories of subject matter not eligible for patenting:  "[1] laws of nature, [2] physical phenomena, and [3] ***abstract ideas***."  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014).  "[T]he concern that drives this exclusionary principle [is] one of pre-emption."  *Alice*, 573 U.S. at 216.  That is, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work" and a monopoly over these ideas would inappropriately preempt their use in all fields.  *Bilski*, 561 U.S. at 611-12.

Determining whether a patent claim is directed to an abstract idea involves a two-step process called the "*Alice* test" which was espoused in *Alice Corp. v. CLS Bank*.  *See*, *e.g.*, *Alice*, 573 U.S. 208, 217-18.  At Step One of the test, the court must determine whether the claims at issue are directed to patent-ineligible subject matter, such as an abstract idea.  *See id.* at 217.  If the answer is yes, at Step Two of the test the court must look to the "elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept."

This inventive concept may be found in "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18.

"A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 573 U.S. at 221. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222. As such, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223; *see also Yu*, 1 F.4th at 1043. The Federal Circuit has "made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). The Federal Circuit has also repeatedly confirmed that a claim that can be performed by humans but is later automated using a computer is not patent-eligible. *Ericsson*, 955 F.3d at 1327; *see also NetSoc v. Match Grp., LLC*, 838 Fed. Appx. 544, 548 (Fed. Cir. 2020). Lastly, as future courts take up Section 101 inquiries, they are encouraged to "examine earlier cases in which a similar or parallel descriptive nature can be seen – what prior cases were about, and which way they were decided." *Amdocs*, 841 F.3d at 1294.

## VI.   ARGUMENT:  THE ASSERTED PATENTS CLAIM PATENT-INELIGIBLE SUBJECT MATTER

The claims of the Asserted Patents are invalid under Section 101 because they fail both prongs of the *Alice* test. They fail *Alice* Step One because they are directed to the abstract idea of using a marking (such as a barcode or a QR code) associated with an object to communicate and obtain information about that object. They fail *Alice* Step Two because none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to

11

"*significantly more* than a patent upon the ineligible concept itself."  *Alice*, 573 U.S. at 217-18 (emphasis added).  The claims simply use generic components in conventional ways to communicate and obtain information about an object of interest.  The patents admit that conventional and pre-existing computing hardware is used to perform the claimed method.  In short, all claims are abstract for several reasons and the case should be dismissed with prejudice.

### A.     Claim 1 of the '752 Patent is Representative of All Claims

As a threshold matter, the Court need only analyze Claim 1 of the '752 Patent (the "Representative Claim") because it is representative of all of the claims of the Asserted Patents.  A representative claim may be used in analyzing patent eligibility under Section 101 where all of the claims are "substantially similar and linked to the same abstract idea."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Here, the Representative Claim recites a method with the following steps: (1) capturing an image of an object of interest with a mobile device, (2) detecting symbology associated with the object in the image, (3) decoding the symbology to obtain a decode string, (4) sending the decode string to a server for processing, (5) receiving information regarding the object from the server in response, and (6) displaying the received information on the mobile device.  '752 Patent, Dkt. No. 28-1 at 13:39-52.  The purpose of these steps is to communicate and obtain information about an object, utilizing a portable electronic device that detects symbology (e.g., a barcode, a QR code, etc.) associated with the object.  Put simply, the claim is directed to the abstract idea of using a marking (the symbology) associated with an object to communicate and obtain information about the object.

The Representative Claim is representative because it captures all relevant concepts set forth in the claims of every Asserted Patent.  *See Smart Sys. Innovations, LLC v. Chi. Transit*

12

*Auth.*, 873 F.3d 1364, 1368, n.7 (Fed. Cir. 2017).  To illustrate this, Exhibit A maps every *independent claim* of the Asserted Patents (which all recite the same six basic steps) against the Representative Claim.  While the claims are not identical (nor need they be in order for the Court to utilize a representative claim) they are all substantially similar and linked to the same abstract idea.  *Content Extraction,* 776 F.3d 1348.

The Representative Claim is also representative of every *dependent claim* of the '752 Patent and the other Asserted Patents.  The dependent claims of the '752 Patent itself merely add additional generic steps for accomplishing the claimed method of communicating and obtaining information about an object, such as: (1) running visual detection applications in the background of the portable electronic device (Claims 4 and 25),[7] (2) automatically detecting the symbology (Claim 5),[8] (3) alerting the user when symbology has been detected, asking the user if decoding the symbology is desirable, and receiving a reply from the user (Claims 6, 19 and 26),[9] (4) detecting the symbology in response to a user request (Claim 7),[10] (5) sending instructions to visual detection applications and remote servers to identify the object associated with the decode string and retrieving information about the object (Claim 8),[11] (6) analyzing the decode string

---

[7] Claim 4 of the '752 Patent maps Claim 4 of the '369 Patent and Claim 4 of the '190 Patent. Claim 25 of the '752 Patent maps Claim 25 of the '369 Patent.

[8] Claim 5 of the '752 Patent maps Claim 5 of the '369 Patent and Claim 5 of the '190 Patent.

[9] Claim 6 of the '752 Patent maps Claim 6 of the '369 Patent and Claim 6 of the '190 Patent. Claim 19 of the '752 Patent maps Claim 19 of the '369 Patent and Claim 19 of the '190 Patent. Claim 26 of the '752 Patent maps Claim 26 of the '369 Patent.

[10] Claim 7 of the '752 Patent maps Claim 7 of the '369 Patent and Claim 7 of the '190 Patent.

[11] Claim 8 of the '752 Patent maps Claim 8 of the '369 Patent and Claim 8 of the '190 Patent.

and selecting the appropriate application to decode the decode string (Claims 9, 20, 27 and 28),[12] (7) allowing the user to select the appropriate application to decode the decode string (Claim 10),[13] (8) displaying the information about the object with the digital image (Claims 13, 14, 16, 21 and 22),[14] and (9) decoding the symbology using visual search technology (Claims 15 and 23).[15]   Other dependent claims of the '752 Patent recite insignificant pre- or post-solution activity, such as: (10) enabling users to select certain preferences (Claims 2, 3 and 18),[16] (11) enabling the user to store the received information (Claim 11),[17] and (12) providing e-commerce options to the user (Claim 12).[18]   None of this is patentable.

---

[12] Claim 9 of the '752 Patent maps Claim 9 of the '369 Patent and Claim 9 of the '190 Patent.
Claim 20 of the '752 Patent maps Claim 20 of the '369 Patent.
Claim 27 of the '752 Patent maps Claim 27 of the '369 Patent.
Claim 28 of the '752 Patent maps Claim 28 of the '369 Patent.

[13] Claim 10 of the '752 Patent maps Claim 10 of the '369 Patent and Claim 10 of the '190 Patent.

[14] Claim 13 of the '752 Patent maps Claim 13 of the '369 Patent and Claim 13 of the '190 Patent.
Claim 14 of the '752 Patent maps Claim 14 of the '369 Patent and Claim 14 of the '190 Patent.
Claim 16 of the '752 Patent maps Claim 16 of the '369 Patent and Claim 16 of the '190 Patent.
Claim 21 of the '752 Patent maps Claim 21 of the '369 Patent.
Claim 22 of the '752 Patent maps Claim 22 of the '369 Patent.

[15] Claim 15 of the '752 Patent maps Claim 15 of the '369 Patent and Claim 15 of the '190 Patent.
Claim 23 of the '752 Patent maps Claim 23 of the '369 Patent.

[16] Claim 2 of the '752 Patent maps Claim 2 of the '369 Patent and Claim 2 of the '190 Patent.
Claim 3 of the '752 Patent maps Claim 3 of the '369 Patent and Claim 3 of the '190 Patent.
Claim 18 of the '752 Patent maps Claim 18 of the '369 Patent and Claim 18 of the '190 Patent.

[17] Claim 11 of the '752 Patent maps Claim 11 of the '369 Patent and Claim 11 of the '190 Patent.

[18] Claim 12 of the '752 Patent maps Claim 12 of the '369 Patent and Claim 12 of the '190 Patent.

In sum, all of the claims of the Asserted Patents should fall together regarding subject matter eligibility because they are substantially similar to Representative Claim 1 of the '752 Patent.  *See*, *e.g.*, *Content Extraction*, 776 F.3d at 1348.

### B.    *Alice* Step One: The Asserted Patents are Directed to an Abstract Idea

In determining patent eligibility under Section 101, the Court must first decide whether the claims are directed to an abstract idea at Step One of the *Alice* test.  *Alice*, 573 U.S. at 217.  Under any plausible reading, the claims of the Asserted Patents are focused on the unpatentable abstract idea of using a marking (such as a barcode or a QR code) associated with an object to communicate and obtain information about that object.  In addition, the claims of the Asserted Patents cannot survive *Alice* Step One for the independently-invalidating reasons that they recite generic steps to carry out basic, results-focused functions, rather than reciting a specific improvement to computers, and they can be carried out entirely by a human.

### 1.    The Representative Claim is Focused on the Abstract Idea of Using a Marking Associated with an Object to Communicate and Obtain Information About the Object

Step One of the *Alice* test requires analyzing the "focus" of the claims – their "character as a whole."  *Elec. Power Grp.*, 830 F.3d at 1353.  While some claims may appear complex on their face, the goal of this step is to identify the "basic concept" at the "heart" of the claims.  *Id*.

The basic concept at the heart of the Representative Claim is using a marking (such as a barcode), to communicate initial information about an object and then obtain more information about the object.  The claim accomplishes this by capturing, detecting, decoding, sending, receiving and displaying data using generic components and known processes.  '752 Patent, Dkt. 28-1 at 13:39-52.  At its core, the Representative Claim therefore describes some of the most generic functional steps of a standard computer (i.e., capturing, detecting, decoding, sending, receiving, and displaying data) and then it talks of deploying these functions to obtain

15

information.  This broad concept is not patent eligible because it "recite[s] an abstraction – an idea, having no particular concrete or tangible form."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  The claim's reference to conventional hardware and computer applications to accomplish this process, such as a "digital image capturing device," a "portable electronic device," a "remote server," a "display device," and generic "visual detection applications" does not make the claim less abstract and actually underscores its patent ineligibility.  *Id.*  Notably, this Representative Claim is not limited to any particular technology used for capturing, detecting, decoding, sending, receiving, or displaying data and does not explain how any of those steps are performed.  Rather, the claim simply "embrace[s] the abstract idea of using a marking [associated with an] object to communicate information about the [] object," which has already been found to be unpatentable.  *Secured Mail Sols.*, 873 F.3d at 911.

Thus, the Representative Claim does no more than use existing technology to capture an image, recognize and decode a barcode, send the decoded information to a server for more information, retrieve that information, and display it.  This is not enough to be patent-eligible.

> **2.    The Representative Claim is Not Directed to a Specific Improvement in the Way a Computer Operates**

The Representative Claim is also patent ineligible for three additional independent reasons related to the fact that it not directed to specific improvements in computers.  The Motion can be granted based on any one of these arguments.

***First***, the Representative Claim does not cover an improvement to computer technology.  Rather, the Representative Claim here invokes generic computer components and technology: (1) a "digital image capturing device" (i.e., a camera, scanner, etc.),[19] (2) a "portable electronic

---

[19] *See* '752 Patent, Dkt. No. 28-1 at 2:55-3:11; 11:10-11.

device" (i.e., mobile phone, personal digital assistant (PDA), portable media player, etc.),[20]
(3) "symbology" (i.e., a barcode, photosymbol, standard or specialized text, identification code,
barcode number, UPC number, alphanumeric number assigned to a product, the name of the
article, etc.),[21] (4) a "decode string" (i.e., information obtained from the symbology),[22]
(5) "visual detection applications residing on the portable electronic device" (i.e., known
decoding software, such as image or character recognition software, stored on the portable
electronic device and used to decode the captured symbology),[23] (6) a "remote server" (i.e., a
general purpose computer associated with a website),[24] and (7) a "display device associated with
the portable electronic device" (i.e., any suitable display on a portable electronic device).[25]

The Asserted Patents admit that these components were well known for many years
before the alleged invention.[26]  In short, the Representative Claim is not directed to a new
computer component, a new barcode format, an improved method for decoding a barcode, or any
other type of improvement to computer functionality.  These are the hallmarks of an abstract
idea.  *See*, *e.g.*, *Secured Mail Sols.*, 873 F.3d at 910.

The Federal Circuit has found similar claims patent-ineligible because they were not
directed to a specific improvement in the way a computer operates.  In *Secured Mail*, the Federal
Circuit found claims directed to decoding a barcode that was affixed to a piece of mail for the
purpose of obtaining information about the mail invalid under Section 101.  *Secured Mail*, 873

---

[20] *See id*. at 1:22-37; 1:52-61; 3:2-3; 5:2-5; 7:18-20; 9:17-32; 9:46-53.
[21] *See id*. at Abstract, 1:65-2:2; 2:57-61; 2:64-3:4; 4:29-41, 8:37-40; 8:47-50.
[22] *See id*. at 3:12-28.
[23] *See id*. at 2:64-3:50; 4:50-55; 8:57-9:6; 12:42-54.
[24] *See id*. at Figs. 1, 4; 3:61-4:28; 5:33-42.
[25] *See id.* at 6:66-7:9.
[26] *See id*. at 1:22-2:16; 2:55-3:50; 3:61-4:41; 4:50-55: 5:2-5; 5:33-42; 6:66-7:18; 8:34-9:53;
11:10-11; 12:42-54.

F.3d at 907.  There, the claims "provide[d] a method whereby a barcode is generated, affixed to a piece of mail, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device."  *Id.* at 910-11.  The Federal Circuit found that the claims were patent ineligible because they were "not directed to an improvement in computer functionality" and they were "not limited to any particular technology of generating, printing, or scanning a barcode, of sending a mail object, or of sending the recipient-specific information over a network."  *Id.* at 910-11.  Nor were the claims "directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality." *Id.*  Rather, "each generically claimed 'step of the process [was] directed to the abstract process of communicating information about a mail object using a personalized marking.'"  *Id.* at 911. The claims here suffer the same problems, and the same invalidity finding should be reached.

> **Second**, the Representative Claim is also abstract because it only recites basic computing functions performed by conventional computer components. Again, the Representative Claim recites: (1) "*capturing* a digital image using a digital image capturing device that is part of a portable electronic device," (2) "*detecting* symbology associated with an object within the digital image using a portable electronic device," (3) "*decoding* the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device," (4) "*sending* the decode string to a remote server for processing," (5) "*receiving* information about the object from the remote server wherein the information is based on the decode string of the object," and (6) *displaying* the information on a display device associated with the portable electronic device." '752 Patent, Dkt. No. 28-1 at Claim 1 (emphasis added).  All of these functions are performed using conventional computer components and well-known technology

such as: (1) a digital image capturing device, (2) a portable electronic device, (3) symbology such as a barcode (4) a decode string, (5) visual detection applications residing on the portable electronic device, (6) a remote server, and (7) a display device associated with the portable electronic device.[27]

There can be no real dispute that the claimed steps of "capturing," "detecting," "decoding," "sending," "receiving," and "displaying" are generic computing functions used for communicating and obtaining information about an object.  Indeed, the Federal Circuit has previously held that similar generalized, functionally-written steps for obtaining information about mail are abstract.  *See*, *e.g.*, *Secured Mail Sols.*, 873 F.3d at 911 (finding claims directed to a method for providing electronic data to a recipient of a piece of mail containing similar steps of "receiving," "providing," and "display[ing]" are generic and abstract).

The Federal Circuit has also repeatedly recognized more generally that claims directed to collecting data, analyzing it, and displaying certain results of the collection and analysis are in "a familiar class of claims 'directed to' a patent-ineligible concept.'"  *Elec. Power Grp.*, 830 F.3d at 1351-54 (finding claims reciting the generic steps of "receiving data," "detecting and analyzing events," from the received data, and "displaying the event analysis results" were directed to the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis."[28]  This is all the claims do here.

---

[27] The Asserted Patents readily admit that these components were all well-known prior to the patents.  *See* '752 Patent, Dkt. No. 28-1 at 2:55-4:28, 6:66-7:9.

[28] *See also iLife Techs.*, 839 Fed. Appx. at 537 (holding that claims to a system for detecting movement of an object using acceleration data from a sensor were directed to the patent-ineligible abstract idea of "gathering, processing and transmitting data"); *Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (finding claims for "receiving physiologic treatment data" from bedside machines, "converting" the data, "performing at least one programmatic action," and "presenting" the data were directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data" and patent-ineligible under Section

*Third*, the Representative Claim is abstract for the independent reason that it does not recite any specific implementation of the abstract idea.  Nothing in the claim indicates *how* any of the claimed actions are accomplished by the generic computer and network components.  The Representative Claim fails to specify: (1) *how* the digital image capturing device captures a digital image, (2) *how* the portable electronic device detects the symbology associated with an object, (3) *how* the visual detection application residing on the portable electronic device decodes the symbology to obtain a decode string, (4) *how* the decode string is sent to the remote server, (5) *how* information about the object is received from the remote server, and (6) *how* the received information is displayed on the display device of the portable electronic device.  For example, when the Representative Claim requires "decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device," it fails to specify *any* specific "decoding" technique.  *See, e.g., Voip-Pal.com., Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 955 (N.D. Cal. 2019) (finding claims that "contain[] no instructions for how each step of the [claimed process] is accomplished" and instead "simply require[] the functional results of 'receiving,' 'processing,' and 'classifying'" were directed to a patent-ineligible abstract idea), *aff'd without opinion*, 828 Fed. Appx. 717 (Fed. Cir. 2020).[29]  In short, the Representative Claim recites only "the *what* of the invention, but none of the *how* that is

---

101); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (holding claims for "selecting" data, "performing" statistical analysis, and "provid[ing] a report of the analysis were directed to the patent-ineligible abstract idea of "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis").

[29] *See also Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 Fed. Appx. 950, 954 (Fed. Cir. 2017) ("[A] method for collection, analysis, and generation of information reports, where the claims are not limited to how the collected information is analyzed or reformed, is the height of abstraction."); *Affinity Labs of Tex.*, 838 F.3d at 1262 (taking action "through the use of conventional devices, without offering any technological means of effecting that concept" indicates that the claims are directed to an abstract idea).

necessary to turn the abstract ideas into a patent-eligible application" and can be found invalid under Section 101 for this reason alone. *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 Fed. Appx. 991, 993 (Fed. Cir. 2016) (emphasis in original).

**3.    The Representative Claim Can be Carried Out Entirely by a Human**

The Representative Claim is also directed to an abstract idea for the separate reason that computerized activities lacking specificity (i.e., generic collecting, analyzing, and displaying actions) can be accomplished entirely by a human. *See, e.g., Ericsson*, 955 F.3d at 1327. The claims here are directed to a generic process for obtaining information about an object of interest that could be (and has been for decades) performed entirely by a human.

Representative Claim 1 can be distilled down to the following steps: (1) acquiring initial information about an object of interest (i.e., the capturing, detecting and decoding steps), (2) requesting more information about the object (i.e., the sending step), (3) receiving more information about the object (i.e., the receiving step), and (4) displaying the additional information about the object (i.e., the displaying step). These four steps can all be performed by a person, for example, a reference librarian. For as long as there have been reference librarians, a person interested in information about an object can begin his or her information gathering by (1) acquiring an initial set of information (such as standard or specialized text, which is expressly contemplated by the Asserted Patents) about the object, (2) bringing that information to a reference librarian and requesting from the librarian more information about the object, (3) receiving more information about the object from the librarian, which may be (4) displayed in any number of conventional ways (books, magazines, microfiche, etc.). Computerizing this process is not patentable. *See*, *e.g. Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding claims that "could all be performed by humans without a computer" were directed to a patent-ineligible abstract idea).

21

In short, this is a "quintessential 'do it on a computer'" automation patent. *See*, *e.g.*, *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367; *see also PersonalWeb Techs. LLC v. Google* LLC, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (claims for data management tools were "directed to a medley of [human] mental processes," which is a "telltale sign of abstraction"); *Credit Acceptance*, 859 F.3d at 1055 ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology").

*     *     *

In sum, the Representative Claim fails *Alice* Step One for each of these independently-invalidating reasons, and is directed to an unpatentable abstract idea.

**C.    *Alice* Step Two:  The Asserted Patents Lack an Inventive Concept that Amounts to Significantly More Than the Abstract Idea**

Because the Representative Claim fails *Alice* Step One, it is invalid unless it embodies an "inventive concept" under *Alice* Step Two.  *Alice*, 573 U.S. at 221.  In Step Two of the *Alice* test, the Court "search[es] for an inventive concept sufficient to transform the nature of the claim into a patent-eligible application."  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 672 (2018).  "To save a patent at step two, an inventive concept must be evident *in the claims*."  *Id.* (emphasis added).  This inventive concept: (1) "must be significantly more than the abstract idea itself,"[30] (2) "must be more than well-understood, routine, conventional activity,"[31] and (3) "cannot simply be an instruction to implement or apply the abstract idea on a computer."[32]  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been

---

[30] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).
[31] *Affinity Labs of Tex.*, 838 F.3d at 1262.
[32] *BASCOM*, 827 F.3d at 1349.

transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).

Here, the elements of the Representative Claim, whether considered individually or as an ordered combination, do not amount to more than the abstract idea itself. The Representative Claim simply applies the abstract idea to a computerized environment using well-known, routine, and conventional components and functions which do not supply an inventive concept.

### 1.    Considered Individually, the Representative Claim's Computer Components are Conventional and Well-Understood

The claims of the Asserted Patents cannot be saved at *Alice* Step Two because they utilize nothing more than generic computer and network components. That is, the claims add "nothing of substance to the underlying abstract idea" beyond applying them to generic computer components to achieve conventional results. *Alice*, 573 U.S. at 227. Each limitation of the Representative Claim, when viewed individually, clearly shows that the computer implementation is unquestionably generic. Claim 1 recites:

> 1. A method comprising:
>
> capturing a digital image using *a digital image capturing device* that is part of *a portable electronic device*;
>
> detecting *symbology* associated with an object within the digital image using a portable electronic device;
>
> decoding the symbology to obtain *a decode string* using one or more *visual detection applications* residing on the portable electronic device;
>
> sending the decode string to *a remote server* for processing;
>
> receiving information about the object from the remote server wherein the information is based on the decode string of the object;
>
> displaying the information on *a display device* associated with the portable electronic device.

'752 Patent, Dkt. No. 28-1 at 13:39-52 (emphasis added).

As shown above, the Representative Claim only requires a combination of generic components and technology.  For the claimed components to constitute an inventive concept, they must do something more than perform "well-understood, routine, [and] conventional activities previously known to the industry," but it is clear from the plain language of the claim that they do not.  *Content Extraction*, 776 F.3d at 1347-48.

The Representative Claim fails *Alice* Step Two for a few reasons.

*First*, none of the claimed components are limited to any specific device; they are all claimed generically.  *Second*, none of the claimed components are new or inventive; the specification of the Asserted Patents admits that they are well-known and conventional components.  *See* Section VI(B)(2) at 16-18, *supra*.  *Third*, the claims do not require a combination of these well-known computer components in any inventive way.  Rather, they simply require that the combination of these components "allow[] a user to utilize a portable electronic device to retrieve information about an object in response to the portable electronic device detecting symbology, e.g., a barcode, associated with the object."  *Id.* at 1:65-2:2.  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG Tech LLC*, 899 F.3d at 1290-91.  This is the case here.

## 2.   The Elements of the Claims Do Not Include an Inventive Concept When Considered as an Ordered Combination

The ordered combination of steps in the Representative Claim fails to supply an inventive concept because it is "a conventional ordering of steps … with conventional technology to achieve its desired result." *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).  As explained above, the claim limitations of Representative Claim 1 contain nothing non-conventional or non-generic in their arrangement of known, conventional

24

components.  The Representative Claim only requires a combination of a "digital image capturing device," a "portable electronic device," "symbology, a "decoding string," "visual detection applications," a "remote server," and a "display device associated with the portable electronic device" performing their normal functions in their normal sequence if one's goal was to communicate and obtain information about an object of interest.  These claimed components are used exactly how they are normally used.  *See* '752 Patent, Dkt. No. 28-1 at 1:22-2:16; 2:55-3:50; 3:61-4:41; 4:50-55: 5:2-5; 5:33-42; 6:66-7:18; 8:34-9:53; 11:10-11; 12:42-54.  Thus, the Representative Claim does not recite a "nonconventional and non-generic arrangement of known, conventional pieces."  *BASCOM,* 827 F.3d at 1350.  Nor does it teach how known components "operate in an unconventional manner."  *Amdocs,* 841 F.3d at 1300-01.

Similarly, the claimed method merely captures a digital image, detects symbology associated with an object within the digital image, decodes the symbology to obtain a decode string, sends the decode string to a remote server, receives information about the object from the remote server, and displays the information on the display of the portable electronic device.  No inventive concept can be found in the particular ordering of this claimed process.

*        *        *

The Representative Claim fails *Alice* Step Two and is an abstract idea under Section 101.

## VII.    CONCLUSION

For the foregoing reasons, all of the claims of Asserted Patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101.  Defendants therefore respectfully request that the Court grant this Motion, find all claims of the Asserted Patents invalid for being directed to a patent-ineligible abstract idea, and dismiss Plaintiff's Consolidated Complaint with prejudice.

Dated:  February 6, 2024              Respectfully submitted,

*/s/  Jared D. Eisenberg*
Christopher Schwegmann (SBN 24051315)
Jared D. Eisenberg (SBN 24092382)
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 752101
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
Email: cschwegmann@lynnllp.com
Email: jeisenberg@lynnllp.com

Joshua B. Long (SBN 24078876)
**KELLEY DRYE & WARREN LLP**
515 Post Oak Boulevard, Suite 900
Houston, Texas 77027
Telephone: (713) 355-5000
Facsimile: (713) 355-5001
Emails: jlong@kelleydrye.com

Michael J. Zinna (Admitted *Pro Hac Vice*)
Vincent M. Ferraro (Admitted *Pro Hac Vice*)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: mzinna@kelleydrye.com
Email: vferraro@kelleydrye.com

*Attorneys for Defendants*
*Yves Saint Laurent America, Inc.*,
*Alexander McQueen Trading America, Inc.*, and
*Bottega Veneta, Inc.*

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 6, 2024 a true and correct copy of the foregoing document was filed electronically with the Clerk of this Court and served on all parties of record via the Court's ECF System.

*/s/ Jared D. Eisenberg*
Jared D. Eisenberg
